**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Daniel and Sherri Metz,**<br>                                    Plaintiffs,<br><br>**v.**<br><br>**State Farm Fire and Casualty Company,**<br>                                    Defendant. | **CIVIL ACTION**<br><br>**NO. 23-2502** |

**MEMORANDUM RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

Baylson, J.                                                                October 29, 2024

This case involves Plaintiffs Daniel and Sherri Metz's breach of contract and bad faith claims against Defendant State Farm Fire and Casualty Company. A pipe underneath Plaintiffs' home ruptured causing their toilet to overflow. At issue is whether the costs to access the pipe are covered by Plaintiffs' Insurance Policy. Presently before the Court are the Parties' cross-motions for summary judgment. For the reasons explained below, Plaintiffs' motion is **DENIED**, and Defendant's motion is **GRANTED**.

## I.   FACTUAL BACKGROUND

### A.  The Insurance Policy

Defendant issued a property insurance policy to Plaintiffs ("Policy") that provided coverage for Plaintiffs' property located at 816 Buckingham Road, Jenkintown, Pennsylvania 19046-2313. ECF 34 at 3 ¶ 8. Plaintiffs' Policy was in effect at all relevant times, including at the time of the loss event, in February 2023. ECF 34 at 5 ¶ 10. The following Policy provisions are relevant.

**SECTION I – ADDITIONAL COVERAGES**

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

14. **Tear out.** If a *loss insured* to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, *we* will also pay the reasonable cost *you* incur to tear

out and replace only that particular part of the **building structure** necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. **We** will not pay for the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

## SECTION I – LOSSES NOT INSURED

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

f. seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:
    (1) and is:
        (a) continuous;
        (b) repeating;
        (c) gradual;
        (d) intermittent;
        (e) slow; or
        (f) trickling; and
    (2) from a:
        (a) heating, air conditioning, or automatic fire protective sprinkler system;
        (b) household appliance; or
        (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown[.]

## B. Loss Event

On or around February 26, 2023, Plaintiffs' homes suffered water damage because of an overflown toilet.  ECF 34 at 3 ¶ 9.  On March 10, 2023, Plaintiffs submitted a claim to Defendant which reported that their property sustained "water damages to home from an overflowed toilet caused by a ruptured drainpipe under the concrete slab."  ECF 34 Ex. C.  The parties agree that the toilet overflowed because of a ruptured drainpipe located in the ground underneath Plaintiffs

concrete basement.  ECF 34 at 4 ⁋ 5.  The parties also agree that Plaintiffs' toilet had previously overflown several times, starting in 2020 or 2021.  ECF 34 at 4 ⁋ 14.

### C.  Plaintiffs' Public Adjuster

To assist in their insurance claim, Plaintiffs retained Funari Public Adjusters and were represented by Joseph Funari.  ECF 34 Ex. I.  Funari reported that a drainpipe under the family room of Plaintiffs' home ruptured, leading to a toilet overflow and interior damage.  ECF 34 at 3 ⁋ 11.  Funari attempted to reach an agreement with Defendant on the scope of Plaintiffs' loss, meeting with Defendant's adjuster, Scott Nichols, during a property inspection.  ECF 34 at 6 ⁋ 14. No agreement was reached.

Funari also submitted an affidavit, as part of this case, in which he explained his extensive experience handling water loss claims caused by subsurface pipe breaks, including claims brought under Defendant's insurance policies.  ECF 34 Ex. J ⁋⁋ 2, 3.  Funari stated that, "[o]n all occasions where a broken pipe has resulted in a loss wherein the pipe needs to be accessed and tear-out is required, State Farm has issued payment for costs associated with the access and tear-out work regardless of whether the pipe itself is subject to coverage."  ECF 34 Ex. J ⁋ 4.

### D.  Defendant's Investigation

Defendant conducted its own investigation of Plaintiffs' claim.  Defendant's investigation included an April 5, 2023, property inspection, information provided by Plaintiffs, and documentation provided by third-party vendors.  ECF 34 at 3 ⁋⁋ 10-12, ECF 35 at 5 ⁋ 16. Following the inspection, on May 1, 2023, Defendant issued a letter partially denying Plaintiffs' claim.  ECF 34 Ex. K.  Defendant provided coverage for some interior damage but denied Plaintiffs' claim for tear out costs necessary to replace the broken drainpipe.  ECF 34 Ex. K.  In denying tear out costs, Defendant asserted that the drainpipe was not covered by Plaintiffs' Policy

because it "was the result of normal wear and tear which is excluded by the Homeowners Policy." ECF 34 Ex. K.  The denial letter also stated that Defendant did "not intend by this letter to waive any policy defenses in addition to those stated above and reserves its right to assert such additional policy defenses at any time."  ECF 34 Ex. K.

### E.  Plaintiffs' Alleged Damages

Defendant paid approximately $3,000 in coverage for interior water damage—significantly less than the costs Plaintiffs incurred to access the drainpipe and restore their home to pre-loss condition.  ECF 35 Ex. G at 10.  Plaintiffs admit that the drainpipe failed because of "wear and tear," an uninsured loss under their Policy.  ECF 39 at 17.  However, Plaintiffs argue that the Policy's tear out provision requires Defendant to provide coverage for tear out costs necessary to access the drainpipe.  Plaintiffs seek reimbursement for the costs to remove sections of the concrete floor (ex: $22,860 for "slab removal, excavation, and fill") and to reconstruct the property to pre-loss condition (ex: $18,000 to "reconstruct family room").  ECF 34 at 5 ¶ 8, ECF 34 Ex. G. Additionally, Plaintiffs seeks punitive damages and attorneys' fees under 42 Pa. C.S.A. § 8371.

## II.  <u>PROCEDURAL HISTORY</u>

Based on Defendant's refusal to cover Plaintiffs' full claim, Plaintiffs filed this Complaint in the Philadelphia County Court of Common Pleas in May 2023.  ECF 8 at 7.  Defendant, an Illinois corporation, timely filed a Notice of Removal pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441.  ECF 1.  On July 5, 2023, Defendant moved to dismiss Plaintiffs' claim for bad faith pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF 9.  Plaintiffs responded in opposition on July 26, 2023.  ECF 10.  On September 14, 2023, this Court granted Defendant's motion, without prejudice, on the grounds that Plaintiffs did not allege with sufficient specificity whether Defendant lacked a reasonable basis for denying coverage and if so, Defendant's *mens*

*rea* with respect to that denial.  ECF 11.  Plaintiffs promptly filed an Amended Complaint on September 20, 2023, again asserting two causes of action against Defendant, breach of contract (Count I) and bad faith (Count II).  ECF 13.  On December 15, 2023, Defendant answered the Amended Complaint and asserted numerous affirmative defenses.  ECF 14.  On September 12, 2024, at the close of the dispositive motions' deadline, both parties submitted motions for summary judgment.

## III.   PARTIES' CONTENTIONS

### A.  Breach of Contract (Count I)

Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that the Policy covers tear out costs to access the drainpipe.  In support, Plaintiffs argue that (1) coverage for access to and replacement of the drainpipe are separate claims and that they only seek coverage for the drainpipe access, Plaintiffs, "do not disagree with the Defendant's assessment that the pipe failed as a result of wear and tear[,]" and, (2) the water damage from the toilet overflow was caused by the broken drainpipe, and thus drainpipe access is covered under the Policy.  ECF 34 at 12-13.

Defendant's Response to Plaintiffs' Motion for Summary Judgment

In response, Defendant argues that Plaintiffs cannot prove that Defendant breached a duty because Defendant properly applied Plaintiffs' Policy to the claim.  ECF 40 at 3.  Defendant argues that Plaintiffs' Policy: (1) does not cover drainpipe repair or replacement because the drainpipe failed due to wear, tear, deterioration, and/or mechanical breakdown, (2) only provides tear out coverage for insured losses and thus drainpipe access is excluded under Plaintiffs' Policy because the drainpipe's failure is not an insured loss, and (3) excludes "abrupt or accidental discharge or overflow of water that occurs or develops over a period of time" caused by "seepage or leakage of

water" that is continuous, repeating, gradual, intermittent, slow, or trickling ("repeated water exclusion"), and Plaintiffs' water leakage is excluded because it occurred over several years.  ECF 40 at 4-8.

<u>Defendant's Motion for Summary Judgment</u>

Similarly, in its Motion for Summary Judgment Defendant argues that Plaintiffs cannot prove breach because the Policy does not provide tear out coverage for (1) uninsured losses, or (2) repeated or intermittent water seepage or leakage. Defendant argues that Plaintiffs' property damage was an uninsured loss because it was the result of wear, tear, deterioration, and/or mechanical breakdown, demonstrated by photographs of the drainpipe cracked and covered in a thick level of rust.  ECF 35 at 5-7.  Defendant next argues that even if wear and tear were insured losses, the repeated water exclusion applies, as demonstrated by Plaintiff Sherri Metz's deposition testimony that the toilet overflowed three to five times, starting in 2020 or 2021.  ECF 35 at 7-8.

<u>Plaintiffs' Response to Defendant's Motion for Summary Judgment</u>

Plaintiffs respond that (1) the Tear Out provision applies, and (2) Defendant cannot raise new exclusions at summary judgment.

Plaintiffs first argue that the tear out provision applies because the water damage was an insured loss and drainpipe access was required to repair the system that caused the water damage. In support, Plaintiffs argue that (1) the plumbing report establishes that the water damage resulted from the overflown toilet, caused by the broken drainpipe, (2) if the drainpipe was not repaired, the toilet would have continued to overflow, (3) Defendant triggered coverage by acknowledging that the water damage is a covered loss, and (4) the Policy covers tear out costs "to gain access to the specific point of the system or appliance from which the water, steam, or sewage escaped," and thus covers tear out costs to access the drainpipe.  ECF 39 at 17-19.

Plaintiffs next argue that (1) Defendant cannot raise the repeated water exclusion for the first time at summary judgment, and (2) even if Defendant could raise the exclusion for the first time at this stage, the argument is meritless because Defendant acknowledged that the water damage is a covered loss.

To start, Plaintiffs argue that Defendant cannot raise a new affirmative defense in its Motion for Summary Judgment.  Plaintiffs argue that the defense of a claim involving a partial denial letter is analogous to an insurer's duty to defend, which is determined "solely" by the allegations in the "four corners" of the complaint.  ECF 39 at 22 (citing <u>Kvaerner Metals Div. Kvaerner U.S., Inc. v. Com. Union Ins. Co.</u>, 908 A.2d 888, 896 (Pa. 2006)).  Plaintiffs also analogize the facts of this case to a recent Pennsylvania Superior Court case which they cite for the proposition that an insurer issuing a reservation of rights letter must include details about what exclusions could potentially apply.  ECF 39 at 22 (citing <u>Selective Way Ins. Co. v. MAK Servs., Inc.</u>, 232 A.3d 762 (Pa. Super. Ct. 2020)).  Plaintiffs argue that Defendant is likewise precluded from raising the repeated water exclusion at summary judgment because it did not include the argument in its partial denial letter. ECF 39 at 22.

In the alternative, Plaintiffs argue that even if Defendant could raise the repeated water exclusion for the first time at the summary judgment stage, the argument is meritless because Defendant already acknowledged that the water damage is a covered loss.  Plaintiffs point to Defendant's Motion for Summary Judgment where Defendant admits that (1) it provided coverage for the water damage, and (2) Plaintiffs' loss was the result of the "abrupt and accidental overflow of the toilet."  ECF 39 at 21-22 (citing ECF 40 at 7).

<u>Defendant's Reply in Support of its Motion for Summary Judgment</u>

In contrast, Defendant argues that (1) it did not waive any Policy exclusions, and (2) waiver cannot be based on a material omission.

Defendant argues that it did not waive the repeated water exclusion because (1) the partial denial letter formed the primary, but not exclusive, reasons for denial and explicitly stated as such, and (2) it incorporated the entire Policy into its Answer with Affirmative defenses and into every other step of claim handling and litigation, and that nothing more is required to assert a Policy exclusion.  ECF 42 at 3-4.

Defendant further alleges that during the claim handling, Plaintiffs reported that the toilet had overflown on only a single occasion.  ECF 42 at 2.  Defendant notes that it was only after litigation began that Plaintiffs disclosed the repeated and ongoing nature of the overflowing toilet. ECF 42 at 2.  Defendant argues that even if a Policy exclusion was waived, waiver cannot be based on a material omission, or any information withheld well into the discovery period, and thus Defendant may properly assert the repeated water exclusion.  ECF 42 at 2.

### B.  Bad Faith (Count II)

<u>Plaintiff's Motion for Summary Judgment</u>

Plaintiffs argue that Defendant's representation that the Policy does not provide tear out coverage qualifies as bad faith under 42 Pa. C.S.A. § 8371.  ECF 34 at 15.  Plaintiffs argue that an insurer "may be found guilty of bad faith in misrepresenting policy terms or limits."[1]  ECF 34 at 16.  Plaintiffs allege that Defendant misrepresented the Policy terms or limits because (1)

---

[1] Plaintiffs cite <u>Hollock v. Erie Ins. Exch.</u>, 842 A.2d 409 (Pa. Super. Ct. 2004) for the proposition that misrepresentation of policy terms or limits can constitute bad faith.  While in <u>Hollock</u> the insurer misrepresented the correct coverage amount, the insurer also engaged in other bad faith behavior, including secret surveillance, setting an arbitrary $30,000 reserve limit (arbitrators thereafter entered a gross award of $865,000), and failing to reevaluate the claim after receiving several pieces of information that should have caused it to.  <u>Hollock</u>, 842 A.2d at 412-13.  The Court made over 100 conclusions of law in which it characterized the insurer's conduct as "reckless."  <u>Id</u>. at 413.  However, Plaintiffs are correct that "an unreasonable interpretation of the policy provisions as well as a blatant misrepresentation of the facts or policy provisions will support a bad faith claim."  <u>Snider for Goldhirsh v. State Farm Fire and Cas. Co.</u>, 644 F.Supp.3d 141, 145 (E.D. Pa. 2022) (Goldberg) (internal citations omitted).

Plaintiffs' public adjuster, Funari, explained that "State Farm routinely pays for costs incurred by an insured when a failed pipe must be accessed in order to be repaired or replaced[,]" and, (2) Defendant treated Plaintiffs differently than other insureds, to Plaintiffs detriment and to Defendant's benefit, when Defendant refused to provide tear out coverage.  ECF 34 at 15. Plaintiffs argue that these facts are clear and convincing evidence of Defendant's bad faith as Defendant's misrepresentation of the Policy was "without a reasonable basis and the Defendant knew or recklessly disregarded its lack of a reasonable basis in denying the access/tear-out claim."  ECF 34 at 16-17.

<u>Defendant's Response to Plaintiff's Motion for Summary Judgment</u>

In response, Defendant argues that Plaintiffs are unable to present clear and convincing evidence that Defendant did not have a reasonable basis for denying tear out coverage and thus Defendant is entitled to summary judgment. ECF 40 at 10.  Defendant argues that it had reasonable basis to deny tear out coverage because the Policy does not cover property damage that results from wear and tear and (1) its inspection concluded that the drainpipe damage was due to wear and tear, deterioration, and/or mechanical breakdown, and (2) photographs produced by Plaintiffs show clear signs of wear and tear.  ECF 40 at 10.  Defendant also notes that Plaintiffs have not produced any reports to show that Defendant's denial of coverage was incorrect.  ECF at 10-11.

<u>Defendant's Motion for Summary Judgment</u>

Likewise, in its Motion for Summary Judgment Defendant argues that Plaintiffs did not provide clear and convincing evidence that Defendant (1) lacked a reasonable basis to deny tear out coverage, and (2) knew or recklessly disregarded that it lacked such a basis, both of which must be proven to assert a bad faith claim under 42 Pa. C.S.A. § 8371.  ECF 35 a 9-10.  Rather, Defendant alleges that its denial of tear out coverage on the grounds that the drainpipe broke from wear and tear, an uninsured loss, was a reasonable basis to deny Plaintiffs' claim.  ECF 35 at 11.

9

Plaintiff's Response to Defendant's Motion for Summary Judgment

Plaintiffs respond that Defendant misrepresented the tear out coverage provided by the Policy because (1) <u>Guadiana v. State Farm Fire and Cas. Co.</u>, WL 243737 (D. Ariz. Jan. 25, 2012) involves almost identical facts and held that tear out coverage must be afforded when the pipe to be accessed was the cause of the loss, putting Defendant on notice that the Policy covered the tear out costs at issue; (2) the Funari affidavit establishes that State Farm routinely pays for costs incurred by an insured when a failed pipe must be accessed, and as such Defendant treated Plaintiffs differently, to Plaintiffs detriment and to Defendant's benefit, and (3) Defendant's misrepresentation was without a reasonable basis and Defendant undeniably knew and recklessly disregarded its lack of a reasonable basis in denying the tear out coverage.  ECF 39 at 23-24.

## IV.   **JURISDICTION AND LEGAL STANDARDS**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are residents of different states and the amount in controversy exceeds $75,000.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  <u>Id</u>.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court

that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed."  Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## V.   DISCUSSION

The parties dispute whether (1) the loss under the Tear Out provision is the ruptured drainpipe or the resultant toilet overflow, and (2) the repeated water exclusion precludes coverage.

### A.  Breach of Contract (Count I)

In Pennsylvania, interpretation of an insurance contract is a question of law, and the applicability of a policy exclusion may be decided at summary judgment.  PECO Energy Co. v. Boden, 64 F.3d 852, 855 (3d Cir. 1995); Butterfield v. Guintoli, 670 A.2d 646, 651 (Pa. Super. Ct. 1995).  "The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy."  401 Fourth St., Inc. v. Inv. Ins. Group, 879 A.2d 166,171 (Pa. 2005).  In analyzing the terms of the policy, courts "do not assume that its language was chosen carelessly" and thus consider "the entire insurance provision."  Id.

Where an insurance contract provision is ambiguous, "the policy provision is to be construed in favor of the insured and against the insurer."  Standard Venetian Blind Co. v. Am. Empire Ins. Co., 49 A.2d 563, 566 (Pa. 1983).  However, if the policy's language is "clear and unambiguous, a court is required to give effect to that language."  Id.  Courts "should read policy provisions to

avoid ambiguities if possible and should not torture the language to create them." <u>Spezialetti v.</u>
<u>Pac. Emp'r Ins. Co.</u>, 759 F.2d 1139, 1142 (3d Cir. 1985).

In Pennsylvania, "the insured bears the burden of proving facts that bring its claim within the
policy's affirmative grant of coverage." <u>Koppers Co., Inc. v. Aetna Cas. and Sur. Co.</u>, 98 F.3d
1440, 1446 (3d Cir. 1996). In contrast, "the insurer bears the burden of proving the applicability
of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an
exclusion is an affirmative defense." <u>Id</u>.

### 1. Applicability of the Tear Out Provision

The Policy provides tear out coverage for insured losses. The parties dispute whether the
Tear Out provision applies to the facts of this case. The provision provides:

### SECTION I – ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and
conditions of this policy.

14. **Tear out.** If a ***loss insured*** to Coverage A property is caused by water, steam, or sewage
escaping from a system or appliance, ***we*** will also pay the reasonable cost ***you*** incur to tear
out and replace only that particular part of the ***building structure*** necessary to gain access
to the specific point of that system or appliance from which the water, steam, or sewage
escaped. ***We*** will not pay for the cost of repairing or replacing the system or appliance itself.
This coverage does not increase the limit applying to Coverage A property.

The parties agree that the drainpipe failed due to wear, tear, deterioration, and/or
mechanical breakdown, that the drainpipe caused the toilet to overflow, and that Defendant
provided partial coverage for water damage resulting from the overflown toilet. ECF 39 at 17,
ECF 34 at 3 ¶¶ 10, 11. The question is whether under the Tear Out provision the loss is the broken
drainpipe or the resultant toilet overflow.

The provision of Plaintiffs' Policy that excludes coverage for property damage resulting
from wear, tear, deterioration, and/or mechanical breakdown provides in relevant part:

**SECTION I – LOSSES NOT INSURED**

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown[.]

The parties agree that the toilet overflow and resultant water damage were caused by the ruptured drainpipe. ECF 34 at 3 ¶¶ 10, 11. Thus, at a minimum, the parties agree that the "loss to the property" "consist[ed] of" wear, tear, deterioration, and/or mechanical breakdown. Since the Policy specifically precludes coverage for "any loss" consisting of wear and tear, Defendant correctly denied coverage on this basis.

Courts have also held, under similar facts, that a broken drainpipe was "directly and immediately caused by" wear and tear. In <u>Wojciechowski v. State Farm Fire & Cas. Co.</u>, Plaintiffs suffered water damage to their family room because of a drainpipe leak. WL 1623585 at *3 (D.N.J. May 8, 2012). The Court held that "all of the claimed damages were directly and immediately caused, without any type of intervening event, by wear and tear to the pipe." <u>Id</u>. The Court rejected Plaintiffs argument that the water damage to the family room was caused by the water leaking from the pipe and not the wear and tear of the pipe, concluding that, "[t]he water's leakage from the pipe is not an intervening event; it was the direct and immediate consequence of the damage to the pipe." <u>Id</u>. Just as the water leaking from the drainpipe was not an intervening event, water overflowing from the toilet is not an intervening event, both are "the direct and immediate consequence of the damage to the pipe." <u>Id</u>.

Similarly, in <u>McMahon v. State Farm Fire and Cas. Co.</u>, a drainpipe failed due to wear and tear and caused a pit below the plaintiff's bathtub to repeatedly fill with water. WL 1377670 at

*1-2 (E.D. Pa. May 8, 2007) (Kelly).  The Court held that, "[t]he water found in the pit beneath the bathtub resulted from a continuous leak in the plumbing and damages arising from this type of water are excluded.  Because this type of damage is excluded under the first sentence of subsection 1.f. the remainder of the provision's language is inapplicable."  Id. at 5.  As in McMahon, where the loss was the failed drainpipe and not the water-filled pit beneath the bathtub, Plaintiffs' loss is the ruptured drainpipe and not the overflown toilet.[2]

Additionally, the Tear Out provision states that Defendant will "pay the reasonable cost you incur to tear out and replace only that particular part of the building structure necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped."  ECF 34 Ex. B at 28.  Defendant correctly notes that "the specific point from which water escaped was the overflowing toilet, for which coverage was provided.  No tear out was required to access the toilet itself, therefore no such coverage was available under the Policy." ECF 40 at 5.[3]

In sum, the Tear Out provision does not cover the costs to access the drainpipe because the provision (1) precludes coverage for any loss that consists of or is directly and immediately caused by wear and tear, and Plaintiffs admit that (a) the underlying cause of the loss was the ruptured drainpipe, and (b) the drainpipe ruptured due to wear and tear, and (2) only provides access to the "specific point" from which water escaped, which here was the toilet and not the drainpipe.

---

[2] Even if the loss insured was the overflow toilet, the Tear Out provision would still preclude Plaintiffs from recovering tear out costs to access the drainpipe.  First, the provision precludes payment for "any loss" that consisted of wear and tear and the parties agree that the water damage was ultimately caused by wear and tear to the drainpipe.
[3] Two courts have recently reviewed this very issue, both finding that this tear out provision only covered access to the toilet itself, where a toilet overflow was caused by underlying pipe failure, because the toilet was the specific point from which the water escaped.  See Haas v. State Farm Fire and Cas. Co., WL 16509786 at *7 (E.D.N.Y. Sep. 24, 2022); State Farm Fla. Ins. Co. v. Shotwell, 336 So. 3d 64, 66-67 (Fla. Dist. Ct. App. 2021).

### 2. Applicability of the Repeated Water Exclusion

As a preliminary matter, Defendant did not waive its right to assert the repeated water exclusion.[4][5]   Plaintiffs advance two theories of waiver: (1) new exclusions cannot be raised at summary judgment, and (2) Defendant waived the exclusion by admitting that the interior water damage was a covered loss.

Turning to Plaintiffs first theory, under Pennsylvania law, "[d]enial of liability on one ground does not in all cases operate as a waiver of all other grounds." Meth v. United Ben. Lif. Ins. Co., 198 F.2d 446, 447 (3d Cir. 1952).  "In the context of an insurer's failure to assert all possible defenses to coverage, plaintiffs must demonstrate 'actual prejudice, that is, when the failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon.'" Pizzini v. Am. Intern. Specialty Lines Ins. Co., 210 F. Supp.2d 658, 675 (E.D. Pa. 2002) (Brody) (quoting Mendel v. Home Ins. Co., 806 F.Supp. 1206, 1215 (E.D. Pa. 1992) (Bartle)), aff'd Pizzini v. Am. Intern. Specialty Lines Ins. Co., 107 Fed. App'x 266, 268 (3d Cir. 2004) (unreported). Additionally, Plaintiffs bear the burden to establish estoppel and must do so by "clear, precise, and

---

[4] Plaintiffs claim that "[t]here are no cases in the Commonwealth of Pennsylvania regarding an insurer being precluded from raising defenses to a first-party claim that have not been raised in a letter of declination" and instead urge the Court to look at "cases involving an insurer's duty to defend." ECF 39 at 22.  However, Courts applying Pennsylvania law have held that an insurer may raise exclusions not included in the initial denial letter so long as the insured is not prejudiced.  See Rock-Epstein v. Allstate Ins. Co., WL 4425059 at *4 (E.D. Pa. Sep. 29, 2008) (Schiller) ("The Court rejects the argument that Allstate waived its right to rely on the wind and hail exclusion contained in the Policy.  Absent a showing of prejudice to the insured, the failure to raise all possible defenses in a denial of coverage letter is not a waiver.").

[5] Plaintiffs also analogize this case to Selective Way Ins. Co.., 232 A.3d.  ECF 39 at 22.  However, Selective Way discusses a reservation of rights letter.  Moreover, in Selective Way, the insurer performed a "deficient investigation" that prejudiced the insured in the underlying litigation.  Id. at 770.  The insured was a snow and ice removal company, sued when an individual slipped and fell at their clients' premise.  Id. at 764.  The Policy that Selective Way provided the insured contained an explicit "snow and ice removal" exclusion that Selective Way failed to include in the reservation of rights letter where it agreed to provide the insured with a legal defense.  Id. at 764-65.  The Court ultimately held that Selective Way was precluded from raising the exclusion eighteen months after the reservation of rights letter because the insured would have been prejudiced in the underlying litigation.  Id. at 769-770.  Even if Selective Way was applicable to Plaintiffs' case, Defendant's investigation was not deficient, and Plaintiffs have alleged no prejudice.  Additionally, even in the reservation of rights context, Selective Way notes that it is "not announcing some new paradigm by which Pennsylvania insurance companies must prophylactically raise all potential coverage defenses in order to preserve them.  However, the lack of specificity in the letter bespeaks the deficient investigation carried out by Selective Way."  Id. at 770.

unequivocal evidence." Id. (quoting Chrysler Credit Corp. v. First Nat. Bank and Trust Co., 746 F.2d 200, 206 (3d Cir. 1984)).  "That plaintiff might have been induced to file an unsuccessful lawsuit is not sufficient.  The notion that such reliance, unrelated to the underlying merits of this dispute, suffices to create an estoppel has been rejected by the more recent cases." Weintraub v. St. Paul Fire and Marine Ins. Co., 609 F.Supp. 273, 275 (E.D. Pa. 1985) (Luongo)

Thus, Plaintiffs contention that Defendant is precluded from raising the repeated water exclusion for the first time at summary judgment is incorrect.  Here, Defendant denied liability on one ground, that the broken pipe was not covered by Plaintiffs' Policy and thus the tear out provision was not applicable.  Now, Defendant asserts an additional exclusion which precludes coverage.  Plaintiffs did not act to their detriment in reliance on Defendant's partial denial letter. The facts here are similar to Pfeiffer v. Grocers Mut. Ins. Co., where an insurance company did not waive its right to assert noncoverage where it first refused to pay on a different ground, and the insured provided no proof that he reasonably relied on the initial grounds for denying liability or that he took action to his prejudice, pursuant to such reliance.  379 A.2d 118, 121 (Pa. Super. Ct 2020).  Likewise, Plaintiffs here offer no proof that they took any action pursuant to Defendant's partial denial letter, besides initiating this lawsuit, which does not rise to the level of detrimental reliance. Weintraub., 609 F.Supp. at 276.

Plaintiffs next contend that Defendant waived the exclusion when it provided partial coverage for some interior water damage and again in its summary judgment briefing where it admitted that Plaintiffs' loss was the result of the "abrupt and accidental overflow of the toilet." ECF 39 at 21-22 (citing ECF 40 at 7).  In response, Defendant argues that it was prevented from asserting the repeated water exclusion in the partial denial letter because, when filing their claim, Plaintiffs only reported a single instance of the toilet overflowing.  Additionally, that Defendant

characterized the overflow as "abrupt" in this briefing is not inconsistent with the exclusion which applies "regardless of whether the loss occurs abruptly."

It is worth noting that there is a genuine dispute of material fact as to whether Defendant knew, prior to providing coverage for the interior water damage, that Plaintiffs' toilet had overflown on multiple occasions. However, even if Defendant had known, Defendant did not waive its rights to deny Plaintiffs' tear out costs under the exclusion.

Waiver "does not operate to expand coverage under an insurance policy." Pfeiffer, 379 A.2d at 121. "[C]onditions going to the coverage or scope of a policy of insurance, as distinguished from those furnishing a ground of forfeiture, may not be waived by implication from the conduct or action of the insurer." Gerow v. State Auto. Prop. & Cas. Co., 364 F.Supp.3d 769, 781-82 (W.D. Pa. 2018); see also Stevanna Towing, Inc. v. Atl. Specialty Ins. Co., WL 12241451 at *5 n.3 (3d Cir. Oct. 21, 2022) (unreported) (quoting Wasilko v. Home Mut. Cas. Co., 232 A.2d 60, 62 (Pa. Super Ct. 1967) for the proposition that "[t]he doctrine of implied waiver is not available to bring within the coverage of an insurance policy, risks that are expressly excluded therefrom[,]" in rejecting the argument that Defendant waived a defense by not asserting it in the denial letter). Plaintiffs do not allege that Defendant expressly waived the repeated water exclusion, but rather than Defendant implicitly waived the exclusion by providing partial coverage for the interior water damage.

Turning to the substantive question, whether the exclusion applies to the facts of this case, the exclusion is detailed *supra*. In analyzing this exact State Farm provision, courts have routinely held that the provision is unambiguous. Fifth v. State Farm Ins. Co., WL 1253542 at * 5 (D.N.J. Mar. 25, 2014). Courts have found the exclusion to apply to the following facts: (1) a leak that occurred over one month where part of the floor buckled, indicating to Plaintiffs that there may be

a leak; (2) water damage that Plaintiff alleged was caused by a one-time leak in the air conditioner condensate line but where Defendant's investigation concluded that it was the result of repeated seepage based on the use of bleach to get rid of mold; (3) a drainpipe leak that itself caused no property damage and that Plaintiffs only learned of by removing the bathroom paneling and observing that the pit underneath the bathtub was filled with water; and (4) a broken drainpipe that Plaintiffs learned of after discovering water on the floor and where Plaintiffs contacted a plumber immediately after discovering the water.  See Fifth, WL 1253542 at * 5; Brodzinski v. State Farm Fire and Cas. Co., WL 3675399 at *4 (E.D. Pa. Aug. 25, 2017) (Surrick); McMahon, WL 1377670 at *1, 5; Wojciechowski, WL 1623585 at *1, 5.

Plaintiffs' water damage was the result of continuous, repeating, and gradual water seepage and leakage that occurred over a period of two to three years.  Plaintiff Sherri Metz's deposition testimony, Plaintiffs' Response to Defendant's Motion to Dismiss, and the Parties' Undisputed Facts all state that the toilet overflowed on several occasions prior to the loss event in February 2023.  ECF 35 Ex. I at 18:23-19:8, ECF 34 at 4 ¶ 14, ECF 39 at 17.  Sherri Metz testified in her deposition that the toilet overflowed three to five times, starting in 2020 or 2021, ECF 35 Ex. I at 18:23-19:8, and that during each of these instances the water overflowed from the toilet and onto the carpet outside the bathroom.  ECF 35 Ex. I at 22:13-22:17.  Plaintiffs were on notice for years that there was a potential plumbing problem.  In fact, in February 2023, one month before the toilet overflow at issue, Plaintiffs stopped using the toilet.  ECF 35 Ex. I at 23:8-23:10.

Plaintiffs decided to file a claim for the March 2023 toilet overflow, as opposed to prior overflows, because they had recently remodeled their basement and noticed that water from the overflowing toilet had "ran down into the basement."  ECF 35 Ex I. at 23:13-23:24.  Additionally, Plaintiffs admit that the overflowing toilet was caused by wear and tear of the drainpipe.  ECF 39

at 17. Water damage caused by a broken drainpipe falls under the repeated water exclusion, even in cases where Plaintiffs were not on notice of the repeated nature of the leakage or seepage, as Plaintiffs here were.  Thus, the damage to Plaintiffs property was caused by continuous, repeating, and gradual water seepage and leakage that occurred over a period of two to three years.

### B.  Bad Faith (Count II)

Defendant did not breach the contract and is thus not liable for bad faith.  To prove bad faith under 42 Pa. C.S.A. § 8371 plaintiffs must demonstrate, by clear and convincing evidence, that an insurer, (1) lacked a reasonable basis for denying benefits, and (2) knew or recklessly disregarded its lack of a reasonable basis.  Klinger vs. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3rd Cir. 1997) (citing Terletsky vs. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Defendant correctly applied the Policy's terms in denying tear out coverage.  As such, Defendant had a reasonable basis to deny benefits and Plaintiffs' bad faith claim fails.

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**.  The Complaint is dismissed with prejudice and the Clerk shall close this case.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 23\23-2502 Metz v State Farm\23-2502 Metz v. State Farm MSJ Memo Final.docx